**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

_____

SWISS RE INTERNATIONAL SE,

     Plaintiff,

          vs.                                    No. 2:24-CV-00213-KG-JFR

PARK & ASSOCIATES, LLC, a New Mexico
Limited Liability Company, GEOFFREY D.
WHITE and JANE DOE WHITE, Husband
And Wife; NORA & PATRNERS, LLP, an
Illinois Limited Liability Partnership.
VERONICA NULMA; MYRA BROWN,

     Defendants.

## ORDER GRANTING NORA DEFENDANTS' RULE 12(b)(2) MOTION TO DISMISS

     **THIS MATTER** is before the court on Veronica Nulman, Myra Brown, and Nora &

Partners, LLP's (collectively, "Nora Defendants) Fed. R. Civ. P. 12(b)(2) Motion to Dismiss,

(**Doc. 12**), filed on April 10, 2024.  Plaintiff Swiss Re International filed its Response, (**Doc. 27**),

on July 19, 2024.  The Nora Defendants filed their Reply, (**Doc. 28**), on August 2, 2024.  Having

considered the parties' briefing and the applicable law, the Court **GRANTS** the Nora Defendants

Motion to Dismiss, (**Doc. 12**).

## BACKGROUND

     This case arises out of an attorney-client relationship between Plaintiff Swiss Re, a

Luxembourg corporation with its principal place of business in Luxembourg, and the Nora

Defendants.  Defendants Veronica Nulman and Myra Brown are both domiciled in Chicago,

Illinois, and, at all relevant times, were employed by Defendant Nora & Partners LLP.,

Defendant Nora & Partners LLP is a law firm and Illinois limited liability partnership with its

principal place of business in Chicago, Illinois.

1

The Nora Defendants worked as underwriters' representative and monitoring counsel for Plaintiff SwissRe.  (**Doc. 28-1**) **at 2–3; (Doc. 28-2) at 5**.  As underwriting representative and monitoring counsel, insureds reported claims to the Nora Defendants who acknowledged the claims, monitored  them for a large increase in reserves, talked to the insured and defense counsel about those claims, reviewed the claims once a year for renewal purposes of anything that has the potential to reach excess coverage, and followed them through trial and appeals if necessary.  ***Id.* at 2**.  The Nora Defendants' services to Plaintiff SwissRe included services wherever Plaintiff SwissRe's interests were based.  (**Doc. 28-2**) **at 5**.

On August 23, 2018, a New Mexico jury returned a $73,210,000 plaintiff's verdict against Pecos Valley of New Mexico (Pecos Valley), in *Sperling et al.* v. *Pecos Valley of New Mexico*, *LLC et al.*, Case No. D-101-CV-2016-00742 (the "Medical Malpractice Action").  (**Doc. 1**) **at 1, ¶ 1**.  Plaintiff SwissRe's was one of Pecos Valley's insurers.  ***Id.* at 2, ¶ 3**.  "After the trial court denied Pecos Valley's post-trial motions and entered its final judgment on September 5, 2018, Pecos Valley appealed."  ***Id.* at 2, ¶ 2**.

Part of the Nora Defendants' provision of services to Plaintiff SwissRe included providing legal advice and serving as insurance coverage monitoring counsel in the Medical Malpractice Action.  (**Doc. 28-2**) **at 5**.  This was one of the many matters which encompassed the Nora Defendants' work for Plaintiff SwissRe.  ***Id.***  The Nora Defendants monitored the Medical Malpractice Action for Plaintiff SwissRe and participated in phone calls with Pecos Valley's Appellate counsel about the appeal.  (**Doc. 1**) **at 3, ¶ 5; (Doc. 27-1) at 4, 7**.  The Nora Defendants provided legal advice to Plaintiff SwissRe on the appeal of the Medical Malpractice Action, including whether Plaintiff SwissRe should take part in any mediations or join a separate coverage action filed by Pecos Valley's other excess insurers.  ***Id.* at 3–4, ¶ 6**; (**Doc. 27-2**) **at 10**.

After filing an appeal, Pecos Valley struck the following deal with the plaintiff in the Medical Malpractice Action ("Botello Plaintiffs"): Pecos Valley agreed to post a $50,000,000 bond and to guarantee the remaining portion of the judgment. *Id.* at 2, ¶ 3. In exchange, the Botello Plaintiffs agreed not to execute on the judgment against Pecos Valley pending all appeals, while keeping the right to pursue the judgment against Pecos Valley's tower of excess insurers. *Id.*

On July 1, 2019, the Botello Plaintiffs filed a garnishment action against all of Pecos Valley's excesses insurers, including Plaintiff Swiss Re, in New Mexico's First Judicial District Court. *Id.* at 3, ¶ 4 (referencing *Botello et al. v. Community Insurance Group SPC, Ltd. et al*, No. D-101-CV-2019-01747 (the "Garnishment Action")).

When the Botello Plaintiffs filed the Garnishment Action, the Nora Defendants recommended that Plaintiff SwissRe retain the Albuquerque law firm, Park & Associates, LLC and its lawyer, Geoffrey D. White, to serve as local counsel in the Garnishment Action. *Id.* at 4, ¶¶ 8, 9; (Doc. 27-2) at 12; (Doc. 27-3) at 4. Prior to Plaintiff SwissRe retaining Mr. White as counsel, the Nora Defendants spoke with Mr. White on the phone, explained the case, and clarified that Plaintiff SwissRe needed counsel in the Garnishment Action. (Doc. 27-3) at 4. Plaintiff SwissRe retained Mr. White as counsel for the Garnishment Action. *Id.*

During the Garnishment Action, the Nora Defendants directed Mr. White to communicate with them rather than Plaintiff SwissRe directly. (Doc. 27-3) at 6. Further, Mr. White did not file any briefs or make any major decisions in the Garnishment Action without the approval of the Nora Defendants. (Doc. 27-3) at 6, 10. With respect to filing briefs, pleadings, and discovery Reponses, the Nora Defendants reviewed and provided edits and suggestions on Mr. White's drafts. (Doc. 27-3) at 8, 9; (Doc. 27-1) at 11, 12. Mr. White would then incorporate the Nora Defendants edits and suggestions in SwissRe's motions and briefs. (Doc. 27-3) at 10;

(**Doc. 27-2**) **at 4**.  The Nora Defendants also provided comments, edits, and suggestions on Mr. White's correspondences with the Botello Plaintiffs.  *Id.*

More specific instances of the Nora Defendants' involvement in the Garnishment Action include:

- Ms. Brown advising on whether Plaintiff SwissRe should file an answer or a motion to dismiss, how to argue for staying the Garnishment Action pending appeal, and which arguments to include in Plaintiff SwissRe's response to Botello Plaintiff's motion for summary judgment.  (**Doc. 27-3**) **at 9**.

- Ms. Nulman researching New Mexico law in connection with motions in the Garnishment Action, providing comments on the interpretation of Plaintiff SwissRe's policy for pleadings and discovery responses, and offering insights on choice of law. (**Doc. 27-3**) **at 11**.

- Ms. Nulman and Ms. Brown strategizing with Mr. White regarding arguments for the summary judgment hearing, with Ms. Nulman even offering to be admitted *pro hac vice* for the oral argument.  (**Doc. 27-3**) **at 5**.

- After losing the summary judgment hearing, Ms. Brown directing Mr. White to request the judge to enter an order making the ruling final and appealable.  (**Doc. 27-3**) **at 14**.

According to Mr. White, the Nora Defendants directed the litigation strategy for the Garnishment Action, and to the extent Mr. White did not have a strong disagreement, he followed their directions.  (**Doc. 27-3**) **at 10–11**.  If there was a disagreement between Mr. White and the Nora Defendants, Mr. White deferred to the Nora Defendants.  (**Doc. 27-3**) **at 13**.

Ultimately, in the Garnishment Action, the trial court entered final judgment against SwissRe in the amount of "$18,160,000.00, plus (1) "interest through June 15, 2020, in the

amount of $4,846,495.00," and (2) uncapped post-judgment interest accruing after June 15, 2020, at a rate of 15% per year (or $7,463.01 per day)." **(Doc. 1) at 4, ¶ 11**.

After the trial court entered judgment against Plaintiff SwissRe, SwissRe hired new counsel to replace Mr. White. After new counsel was hired, the Nora Defendants billed approximately 150 hours in connection with the Garnishment Action, including research, emails and calls with "new local counsel" regarding strategy. **(Doc. 25-1) at 20–27**.

On March 4, 2024, following these events, Plaintiff SwissRe filed the instant action alleging legal malpractice claims against the Nora Defendants, Mr. White, and his firm Park & Associates. **(Doc. 1) at 1**. Subsequently, the Nora Defendants moved to Dismiss SwissRe's claims against them pursuant to Rule 12(b)(2) alleging lack of personal jurisdiction. **(Doc. 12)**.

## RELEVANT LAW

### I.    Rule 12(b)(2) standard:

The question of personal jurisdiction must be addressed before a court can reach the merits of a case because "a court without jurisdiction over the parties cannot render a valid judgment." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1090 (10th Cir. 1998) (citing *Leney v. Plum Grove Bank*, 670 F.2d 878, 879 (10th Cir. 1982)).

The plaintiff bears the burden of establishing personal jurisdiction over the defendant. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1069 (10th Cir. 2008) (citing *Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000)).

Where, as here, no evidentiary hearing takes place and the motion to dismiss for lack of jurisdiction is decided based on affidavits and other written materials, the plaintiff need only establish a *prima facie* case for jurisdiction. *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 839 (10th Cir. 2020) (quoting *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995)).

To make a *prima facie* showing, a plaintiff must present facts, through affidavit or other written materials, that, if true, would establish jurisdiction over the defendant. *OMI Holdings*, 149 F.3d at 1091. If the plaintiff makes a *prima facie* showing, the defendant must then present a compelling case showing that "the presence of some other considerations would render jurisdiction unreasonable." *Id.* (citing to *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

If the parties present conflicting affidavits or other written materials, "all factual disputes must be resolved in the plaintiff's favor, and 'the plaintiff's *prima facie* showing is sufficient notwithstanding the contrary presentation by the moving party.'" *Wenz*, 55 F.3d at 1505.

## II.     Personal Jurisdiction[1]:

"To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *TH Agric. & Nutrition, LLC v. Ace Eur. Grp. Ltd.*, 488 F.3d 1282, 1286–87 (10th Cir. 2007) (quoting *Pro Axess, Inc. v. Orlux Distrib'n, Inc.,* 428 F.3d 1270, 1276 (10th Cir.2005)).

The New Mexico long-arm statute, however, is coextensive with the constitutional limitations imposed by the due process clause. *See Tercero v. Roman Catholic Diocese of Norwich*, 2002-NMSC-018, ¶ 6 (explaining New Mexico's long-arm statute extends jurisdictional reach of New Mexico courts as far as constitutionally permissible). Thus, the Court need not conduct a statutory analysis apart from the due process analysis.

To ascertain whether the exercise of jurisdiction offends due process, courts employ a two-step test: First, courts consider "whether the defendant has such minimum contacts with the

---

[1] Here, Plaintiff SwissRe concedes that this Court cannot exercise general jurisdiction over the Nora Defendants. (**Doc. 27**) **at 10**. Thus, the Court focuses its analysis on specific jurisdiction.

forum state 'that [it] should reasonably anticipate being haled into court there.'" *OMI Holdings*, 149 F.3d at 1091.  Second, courts consider "whether the exercise of personal jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice.'" *Id.*

The Nora Defendants jurisdictional arguments focus on step one: establishing minimum contacts.  (**Doc. 12**).  "[T]he 'minimum contacts' standard requires, first, that the out-of-state defendant must have 'purposefully directed' its activities at residents of the forum state, and second, that the plaintiff's injuries must 'arise out of' defendant's forum-related activities." *Dudnikov* 514 F.3d at 1071 (citing *Burger King*, 471 U.S. at 472).

The first requirement—purposeful direction—can manifest in different forms.  *Id.*  In tort cases, as here, courts often inquire whether the nonresident defendant "purposefully directed" its activities at the forum state.  *Id.* (citation omitted).  In contrast, contract cases may focus on whether the defendant "purposefully availed" itself of the privilege of conducting activities or completing a transaction within the forum state.  *Id.* (citation omitted).  Regardless, the core purpose of the "purposeful direction" doctrine is to prevent an out-of-state defendant from being compelled to appear based solely on "random, fortuitous, or attenuated contacts" with the forum state.  *Id.* (citing *Burger King*, 471 U.S. at 475).

## **DISCUSSION**

The Court begins its analysis by considering whether the Nora Defendants "purposefully directed" their activities at New Mexico or its residents.

The Nora Defendants argue that it did not purposely direct its activities at New Mexico because "the communications and coordination with White were incidents of Brown and Nulman's representation of Swiss Re and were 'ancillary' to their 'primary function' of providing claims monitoring services to an international company."  (**Doc. 28**) **at 4**; (**Doc. 12**) **at 14**.

In its Response, Plaintiff SwissRe contends "the actions taken, and decisions made by the Nora Defendants on the underlying New Mexico litigation out of which Plaintiff's legal malpractice claim arises constitute sufficient minimum contacts for specific jurisdiction because those decisions were aimed at New Mexico litigation and caused the New Mexico court to enter final judgment against SwissRe." (**Doc. 27**) **at 15**. In support, Plaintiff SwissRe cites *Martinez v. Ye*, A-1-CA-38031, mem. Op. (N.M. Ct. App. June 28, 2021) (nonprecedential). *Id.* **at 11–13**.

In *Martinez*, the plaintiff, a resident of California, was injured in a commercial motor vehicle accident in New Mexico. A-1-CA-38031, mem. Op. ¶ 3. After returning to California, he hired the Ye defendants, a California law firm and lawyer, for legal representation. *Id.* With the statute of limitations approaching, the Ye defendants contacted the Ferguson defendants, a New Mexico law firm and lawyer, proposing a joint representation with a 50-50 fee split. *Id.* ¶ 4. The Ferguson defendants agreed, memorialized the terms of the association agreement. *Id.* The plaintiff then signed a representation agreement with both the Ye and Ferguson firms to jointly represent him as legal counsel for all claims arising in connection with injuries and damages received from the accident. *Id.* ¶ 5.

Although the Ye defendants were not licensed in New Mexico and did not formally appear in the federal court litigation, they maintained involvement. *Id.* ¶ 7. Following the litigation, Martinez sued both the Ye and Ferguson defendants for legal malpractice in the Second Judicial District Court in New Mexico. *Id.* ¶ 9. The Ye defendants moved to dismiss for lack of personal jurisdiction, and the district court granted the motion. *Id.* ¶¶ 10–12. The plaintiff appealed. *Id.* ¶ 13.

The Court of Appeals reversed, finding that the Ye defendants' contacts with New Mexico were not fortuitous. *Id.* ¶ 26. By agreeing to represent the plaintiff, the Ye defendants knowingly undertook responsibilities requiring legal services in New Mexico. *Id.* The Court of

Appeals also highlighted how the Ye defendants did not merely refer the case to local counsel but entered into an association agreement, intending to remain involved in the case and share any resulting fees. *Id.* ¶ 36.

Ultimately, the court held "a nonresident defendant, which (1) directly agreed to provide personal services to a client that it knew would need those personal services . . . in New Mexico; and (2) contracted with a New Mexico business to further its provision of those personal services to its client" is subject to personal jurisdiction in New Mexico. *Id.* ¶ 29.

Although the *Martinez* case shares some similarities, it is not controlling. Unlike the Ye defendants, the Nora Defendants did not agree to provide services to Plaintiff SwissRe knowing that those services would be needed in New Mexico. Nor did they contract with a New Mexico business to further their services. Instead, the Nora Defendants' activities related to Mr. White and the New Mexico Garnishment Action were "random, fortuitous, and attenuated."[2]

Even when viewing the facts in the light most favorable to Plaintiff SwissRe, the Court finds no evidence that the Nora Defendants purposefully directed their activities at New Mexico or its residents, unlike the Ye Defendants who agreed to represent a client in a New Mexico case. Their involvement in a New Mexico case arose solely from their pre-existing relationship with Plaintiff SwissRe, not from any purposeful activities directed at New Mexico itself. The Nora Defendants did not solicit clients in New Mexico, physically enter the state, appear as counsel of record, or represent any New Mexico residents. Their role in managing, overseeing, and communicating with local counsel in a New Mexico case, *although substantive*, was merely

---

[2] Plaintiff also cites *Dennett v. Archuleta*, 915 F. Supp. 2d 248, 253–54 (D.R.I. 2013), but it is similarly inapposite for the same reasons as *Martinez*. The Nora Defendants did not agree to provide services to Plaintiff SwissRe with the knowledge that those services would be needed in New Mexico.

incidental to their broader role as underwriters' representative and monitoring counsel for Plaintiff SwissRe. To illustrate, the Nora Defendants' oversight of Mr. White and the New Mexico Garnishment case is like someone booking a flight to a destination and encountering an unexpected layover. The layover was not purposeful but was a result of the person's effort to reach his or her intended destination.

For all these reasons, the Nora Defendants did not purposefully direct their activities at New Mexico or any of its residents. *See Tech. Funding Grp., LLC v. Clayborne*, 2012 WL 13081209, at *5 (D.N.M.) (holding that non-resident attorneys contacts with a resident were ancillary to its primary service to represent a non-resident client and therefore did not establish purposeful availment of the privilege of conducting activities in the forum state; *Wesley v. H & D Wireless Ltd. P'ship*, 678 F. Supp. 1540, 1542 (D.N.M.) (explaining that defendant's contacts with forum state were incidental and did not constitute purposeful availment); *Asahi Metal Ind. Co., Ltd. v. Superior Court of Cal.,* 480 U.S. 102, 112 (1987) (explaining minimum contacts can be formed only "by *an action of the defendant purposefully directed toward the forum State*") (emphasis added).

Because Plaintiff cannot establish that the Nora Defendants purposefully directed their activities at New Mexico or its residents, the Court concludes it analysis and finds insufficient minimum contacts to exercise personal jurisdiction over the Nora Defendants.[3]

Finally, Plaintiff SwissRe asks this Court to sever the Nora Defendants and transfer this case to the United States District Court for the Northern District of Illinois pursuant to Fed. R.

---

[3] Further analysis of whether the Plaintiff's injuries "arise out of" the Nora Defendants' contacts with the forum state or whether exercising personal jurisdiction over them would violate "traditional notions of fair play and substantial justice" is unnecessary, as the Nora Defendants lack sufficient minimum contacts with New Mexico, and the Court will not exercise personal jurisdiction over them.

Civ. P. 21 and 28 U.S.C. § 1404(a).  (**Doc. 27**) **at 21**.  However, transfer, in this case, would be proper under 28 U.S.C. § 1631 rather than § 1404(a).

Under § 1631, "[w]henever a civil action is filed. . . and [the] court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court . . . in which the action . . . could have been brought at the time it was filed."

Plaintiff SwissRe argues that transfer rather than dismissal is the appropriate remedy but offers no case law or argument explaining why transfer is in the interest of justice.  (**Doc. 27**) **at 21**.  Without supporting law or argument from Plaintiff SwissRe, the Court concludes it is not in the interest of justice to transfer the case.

Factors supporting transfer rather than dismissal include whether a new action would be time-barred, the claims are likely to succeed, and the original action was filed in good faith. *Trujillo v. Williams*, 465 F.3d 1210, 1223 (10th Cir. 2006).

While there is no indication Plaintiff SwissRe acted in bad faith, the Court finds no other factors support dismissal.  *First*, without any supporting argument from Plaintiff SwissRe on the merits of its claims, the Court considers this factor neutral, neither favoring nor opposing transfer.

*Second*, Plaintiff SwissRe's claims would not be time-barred if refiled in the United States District Court for the Northern District of Illinois, the district to which it seeks transfer. (**Doc. 27**) **at 21**.  Under Illinois law:

> [W]here the time for commencing an action is limited, if . . .  the action is dismissed by a United States District Court for lack of jurisdiction, then, whether or not the time limitation for bringing such action expires during the pendency of such action, the plaintiff, . . . may commence a new action within one year or within the remaining period of limitation, whichever is greater, after . . . the action is dismissed by a United States District Court for lack of jurisdiction.
>
> 735 Ill. Comp. Stat. § 5/13-217

Because Plaintiff SwissRe's claims would not be time-barred in the proposed transferee district, this factor weighs heavily in favor of dismissal.  Thus, transfer is not in the interest of justice and dismissal without prejudice is the appropriate remedy.   Plaintiff SwissRe retains the option to refile its claims against the Nora Defendants in the Northern District of Illinois or any other appropriate district.  This approach serves judicial economy better than the Court imposing the claims on another district via transfer.

## CONCLUSION

Because the Nora Defendants lack sufficient minimum contacts with New Mexico and its residents, the Court **GRANTS** the Nora Defendants' Rule 12(b)(2) Motion to Dismiss, (**Doc. 12**).  As a result, the Court **DISMISSES** Plaintiff SwissRe's claims against the Nora Defendants **without prejudice**.

**IT IS SO ORDERED.**

/s/ KENNETH J. GONZALES[4]
CHIEF UNITED STATES DISTRICT JUDGE

---

[4] Please note that this document has been electronically filed. To verify its authenticity, please refer to the Digital File Stamp on the NEF (Notice of Electronic Filing) accompanying this document. Electronically filed documents can be found on the court's PACER public access system.